IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES E. SWARTZ, | ) | CASE NO. 1:07 cv 1208 |
| | ) | |
| Plaintiff, | ) | JUDGE BOYKO |
| | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE | ) | **REPORT AND RECOMMENDATION** |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff James E. Swartz's application for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends the decision of the Commissioner be REVERSED and REMANDED to the Social Security Administration for further proceedings not inconsistent with this Report and Recommendation.

## I. PROCEDURAL HISTORY

On June 10, 2003, Plaintiff filed an application for Disability Insurance benefits and Supplemental Security Income benefits, alleging a disability onset date of September 22, 2002

due to limitations related to back problems and mental impairment. On August 3, 2006, Administrative Law Judge ("ALJ") Nino A. Sferrella determined Plaintiff had the residual functional capacity ("RFC") to perform light work that is low stress, requires the performance of simple repetitive tasks, and does not involve contact with the public and, therefore, was not disabled (Tr. 14-18). On appeal, Plaintiff claims the ALJ's decision is not supported by substantial evidence.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Born on June 21, 1959 (age 46 at the time of the ALJ's determination), Plaintiff is a "younger individual." *See* 20 C.F.R. §§ 404.1563, 416. 963. Plaintiff graduated high school and has past relevant work as hand packer (Tr. 67, 292).

### B. Medical Evidence

Plaintiff reported that he hurt his lower back in a car accident in May 1980 (Tr. 160). In August 2003, Sushil Sethi, M.D. examined Plaintiff and found that he had normal ranges of motion in his arms and legs, some limitation of back motion, and normal neurological functioning, including normal strength, reflexes and sensory responses (Tr. 161). According to Dr. Sethi, Plaintiff had about 15 degrees of scoliosis of the lower lumbar spine and some spasms (Id.). X-rays showed that Plaintiff had a compression fracture of the L4 vertebra with minimal osteophytes at L2 and L3 levels (Tr. 162). Dr. Sethi opined that Plaintiff's ability to sit, stand, walk, lift, carry, and handle objects may be moderately limited (Id.).

On September 3, 2003, William B. Schonberg, Ph.D., examined Plaintiff and assessed his mental functioning (Tr. 172-78). Plaintiff reported that he had trouble in his childhood after his

mother died and his father remarried "a wicked stepmother" who abused him (Tr. 172). Plaintiff stated that he never married although he lived with a woman for over a year (Id.). They stopped living together because they fought often (Id.). On examination, Dr. Schonberg noted that Plaintiff was cooperative, but somewhat withdrawn (Tr. 173). His mood was mildly to moderately depressed and anxious and his affect was congruent with his mood (Tr. 174). Dr. Schonberg noted that Plaintiff was embarrassed around people, but was able to get out of his house and shop, though he did so in the evening when there were fewer people in the store (Id.). Dr. Schonberg reported that Plaintiff missed work due to his back problems, rather than because of a fear of his co-workers or supervisors (Tr. 175). Dr. Schonberg assessed moderate limitations in Plaintiff's ability to work in proximity to others, interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism, get along with coworkers or peers, and maintain socially appropriate behavior (Tr. 177). The psychologist opined that Plaintiff could perform simple, repetitive work tasks, and had moderate limitations in his ability to relate to others, meaning he would be more comfortable in a work setting with few co-workers and a supportive supervisor (Tr. 175-76).

On September 15, 2003, State agency psychologist Bruce J. Goldsmith, Ph.D., completed a psychiatric review form, which was affirmed on February 27, 2004 by Douglas J. Pawlarczyk, Ph.D. (Tr. 179). Dr. Goldsmith concluded Plaintiff was mildly limited in activities of daily living, moderately limited in maintaining social functioning, moderately limited in maintaining concentration, persistence or pace, and had no episodes of decompensation (Tr. 182). Dr. Goldsmith provided the following summary of Plaintiff's mental limitations:

> Depression and personality disorder limits extended concentration, pace and task persistence. He is avoidant of people and would not relate well to the public,

>   supervisor or co-workers. [Plaintiff] is limited to routine tasks, with minimal interpersonal contact and without strict time or production demands.

(Tr. 187).

In February 2004, Kirpal Sidhu, M.D., an examining physician, reported that Plaintiff walked without any limp, and did not use ambulatory aids (Tr. 189). He was able to sit, stand, and walk (Id.). According to Dr. Sidhu, Plaintiff demonstrated limitation of back motion, but the doctor also noted that Plaintiff showed subjective resistance when asked to bend his spine (Tr. 190). Plaintiff exhibited no sensory or motor deficit (Tr. 190-90A). Dr. Sidhu opined that heavy work would be difficult for Plaintiff to perform, but light work with sufficient breaks in between may be possible (Tr. 190).

In May 2004, Mei-Chiew Lai, M.D., examined Plaintiff and noted that he demonstrated nearly normal straight leg raising to 80 degrees (Tr. 197). He had normal muscle tone and no atrophy (Id.). According to Dr. Lai, Plaintiff was independent on bed mobility, transfer, and ambulation both with and without assistive devices (Id.). In addition, the doctor found that Plaintiff was able to stand and walk on his toes and heels without difficulty, but complained of pain (Id.). He had no weakness in his arms or legs (Tr. 198). He had trouble bending over, but was able to squat with support (Id.). Dr. Lai opined that Plaintiff was "unemployable" because he was not able to be in one position or do one activity for too long at a time (Id.). Dr. Lai also completed a form assessment and indicated that Plaintiff could stand and walk for 30 minutes at a time up to 4 hours per day, sit for 30 minutes at a time up to 4 hours per day, and lift up to 20 pounds occasionally (Tr. 201).

In June 2004, EMG and nerve conduction studies were normal, showing no evidence of radiculopathy or neuropathy (Tr. 202, 208). Plaintiff's x-rays showed marked compression of

4

the upper portion of the L4 vertebral body (Tr. 202, 206). Dr. Lai stated that Plaintiff was unemployable due to multiple medical problems (Tr. 202).

In September 2005, Dr. Lai noted that he had examined Plaintiff on one occasion in May 2004, and had recently examined him again, and found little change in his physical findings (Tr. 222). Dr. Lai questioned Plaintiff's complaints of pain and suggested that his back and leg symptoms were somewhat exaggerated (Id.). Dr. Lai noted that Plaintiff limped when asked to walk while in the examining room, but was observed walking down the hall without a limp (Id.). Dr. Lai noted that Plaintiff had full ROM in the neck, and limited rage of motion of the dorso-lumbar spine (Id.). Dr. Lai assessed Plaintiff's functional capacity and found that Plaintiff could stand and walk for 30 minutes at a time, for a total of 6 hours during an eight-hour work day; sit for 30 minutes at a time, for a total of 6 hours; lift and carry up to 20 pounds occasionally; was markedly limited in his ability to bend; and was not significantly limited in his ability to push/pull or reach (Tr. 225).

In September 2005, Aaron R. Becker, Psy.D., an examining psychologist, found that Plaintiff was extremely limited in his ability to perform activities within a schedule, work in proximity to others, complete a normal work week without interruptions, ask simple questions, respond appropriately to criticism, get along with coworkers or peers, and interact appropriately with the general public (Tr. 230). Dr. Becker found that Plaintiff was oriented, logical, and goal directed in his thought processes (Tr. 228). He did not have hallucinations or delusions, and had normal speech (Id.). Plaintiff reported that he had been prescribed Effexor by a family physician, but after three months the medication did not seem to be helping his symptoms (Tr. 226). Plaintiff reported that his mood was depressed, he was easily agitated and worried about

5

many things (Tr. 227). He reported that he has very little social contact outside of one friend and some relatives (Tr. 228). Dr. Becker diagnosed major depressive disorder, recurrent, moderate, and generalized anxiety disorder (Id.). Dr. Becker opined that Plaintiff's combination of mental impairments "severely limits [his] functional abilities and almost completely impairs his ability to obtain and maintain gainful employment at this time." (Tr. 229). Dr. Becker assessed extreme limitations in Plaintiff's ability to perform activities within a schedule, work in proximity to others, complete a normal workday or workweek, interact appropriately with the public, ask simple questions, and accept instructions and respond appropriately to criticism from supervisors (Tr. 230).

### C. Hearing Testimony

Plaintiff testified at his hearing that he has had continuous problems with his back since he injured it in 1980, resulting in being fired from many jobs for missing too much work (Tr. 268-69). The pain gradually worsened over the years (Tr. 278). Plaintiff tries to avoid movements that aggravate his pain and his best postural position is standing, which he feels he can maintain for 20 to 25 minutes (Tr. 270-72). Plaintiff also reported that he is depressed all of the time, has a lot of fears, and cries every day for one-half hour (Tr. 275, 281). Plaintiff testified that he continues to take Effexor, but it does not seem to work (Tr. 276). he was trouble getting along with others and goes to the store at night when there are less people (Tr. 280-82).

Dr. Denise Davis, who is board-certified in physical medicine and rehabilitation, testified as a medical expert ("ME") at Plaintiff's administrative hearing (Tr. 285-91). Dr. Davis reviewed Plaintiff's medical records and testified that he had a compression fracture of the lumbar spine at L4, documented in August 2003 by x-rays, which showed about 15 to 30 percent

compression (Tr. 285). Dr. Davis testified that the degree of compression was not really severe, and that it did not appear to be associated with nerve compression, as his reflexes were normal (Id.). With regard to Plaintiff's complaints of bowel problems, Dr. Davis testified that Plaintiff did not seek any treatment or medical evaluation of his bowel problems (Tr. 285-86). Dr. Davis testified that she did not think the bowel problems were related to Plaintiff's compression fracture because the compression fracture was located at L4, and bowel nerve intervention would occur lower on the spine at S1 through S4 (Tr. 286). Plaintiff also complained of an episode of rectal bleeding, but the doctors did not find any hemorrhoids on examination and no further work up was done to explain the basis for this episode (Id.).

According to Dr. Davis, the electromyogram ("EMG") and nerve conduction study done in June 2004 showed that Plaintiff's functioning was normal or average, without any evidence of nerve damage of the lower back (Tr. 202, 286-87). Dr. Davis testified that Plaintiff's back impairment did not meet the criteria of the Listings (Tr. 289). Dr. Davis testified that Plaintiff would be able to do light duty work, which involved standing and walking for 30 minutes at a time, in combination for 6 hours, lifting or carrying ten to twenty pounds occasionally, and up to ten pounds frequently (Id.). According to Dr. Davis, Plaintiff needed postural limitations on squatting or stooping, and restrictions against being around moving machinery, ladders, and scaffolds (Id.). Dr. Davis stated that she could not comment on the severity of Plaintiff's mental impairments (Tr. 286).

Vocational expert ("VE") Dr. Richard Oestreich also testified at the hearing (Tr. 291-96). The VE was asked to consider an individual who is limited to light work and in the manner

outlined by Dr. Goldsmith (Tr. 292). The VE responded that given the multiple moderate restrictions, he did not think such restrictions were "consonant with full time work." (Tr. 293).

## III. DISABILITY STANDARD

A claimant is entitled to receive Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. §§ 404.1505, 416.905.

## IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* Indeed, the Commissioner's determination, if supported by substantial evidence, must stand, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the

opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

The weighing of medical evidence is the province of the Commissioner. Where there are conflicting medical opinions resulting from essentially the same objective medical data, it is the responsibility of the ALJ to resolve those conflicts. *See Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990); *see also Bradley v. Secretary of Health & Human Servs.*, 862 F.2d 1224, 1227-28 (6th Cir. 1988). The ALJ, however, is bound by the Social Security Regulations when doing so. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544, 545 (6th Cir. 2004). The ALJ is required to consider and evaluate every medical opinion in the record. 20 C.F.R. § 404.1527(b), (d). Generally, more weight is given to the opinion of a doctor who has examined the claimant than to one who has not. 20 C.F.R. § 404.1527(d)(1); *see also Manney v. Barnhart*, 320 F. Supp. 2d 681, 695 n. 28 (N.D. Ill. 2004); *Porter v. Chater*, 895 F. Supp. 1427, 1435 (D. Kan. 1995) ("the reports of a reviewing physician (one who does not examine the claimant and who merely reviews medical records) are accorded the least weight").

Plaintiff claims the ALJ erred in his evaluation of many of the medical source opinions in the record. Plaintiff also claims the ALJ erred by failing to consider and evaluate the opinion of State agency physician Dr. Goldsmith.

## A. Dr. Becker

Plaintiff argues Dr. Becker's opinion supports a determination that he is disabled. Plaintiff argues the ALJ should have accepted Dr. Becker's opinion that he has moderate to extreme limitations in many areas of functioning.

The ALJ noted that Dr. Becker found Plaintiff was extremely limited in the ability to perform activities within a schedule, maintain regular attendance, complete a normal work day, perform at a consistent pace, and interact appropriately with the general public (Tr. 17-18). The ALJ also noted Dr. Becker assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 33. The ALJ indicated that a GAF score of 33 reflects impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, or mood (Id.). The ALJ explained that Dr. Becker's report did not support such extreme limitations, as Dr. Becker noted Plaintiff was alert and oriented, had normal speech, had logical and goal directed thought processes, and did not have hallucinations (Id.). The ALJ declined to give weight to Dr. Becker's opinion because he concluded it was inconsistent with the evidence and Dr. Becker's own findings. The record reflects that the ALJ considered and evaluated Dr. Becker's opinion and provided an adequate explanation for rejecting Dr. Becker's conclusions. Accordingly, the Magistrate Judge concludes the ALJ did not err in his treatment of Dr. Becker's opinion.

**B. Dr. Schonberg**

Plaintiff also argues the ALJ erred by not accepting Dr. Schonberg's opinion that Plaintiff has moderate to extreme limitations in many areas of functioning. Plaintiff asserts the ALJ's opinion is devoid of any rationale as to the weight he gave Dr. Schonberg's opinion.

The ALJ's written decision reflects that he considered Dr. Schonberg's September 2003 consultative evaluation. The ALJ noted Dr. Schonberg's diagnoses of dysthymic disorder and avoidant personality disorder (Tr. 14.) The ALJ stated that Dr. Schonberg noted Plaintiff might spend his day on the computer, did his own cleaning, cooking, and laundry, and enjoyed taking care of his animals (Tr. 15). The ALJ found these activities to be consistent with mild restriction in activities of daily living (Id.). The ALJ stated that Dr. Schonberg noted Plaintiff avoided people out of anxiety, and the ALJ found this activity to be consistent with moderate difficulty in maintaining concentration, persistence or pace (Id.). The ALJ also found Dr. Schonberg's findings to be consistent with the diagnoses of dysthymic disorder and avoidant personality disorder. Dr. Schonberg concluded Plaintiff would be more comfortable in a work setting with few coworkers and a supportive supervisor (Tr. 176). The ALJ stated that although Plaintiff expressed fear of coworkers and supervisors, Dr. Schonberg noted Plaintiff did not ever miss work because of this fear (Tr. 17).

Thus, the ALJ's decision shows that he explained his reasons for accepting Dr. Schonberg's conclusions regarding Plaintiff's limitations in daily activities, relating to others, understanding and following directions, social functioning, and maintaining concentration, persistence or pace, and his reasons for rejecting Dr. Schonberg's statement that Plaintiff would be more comfortable in a work setting with few coworkers and a supportive supervisor. Based

upon the above, the Magistrate Judge concludes the ALJ did not err in his consideration and evaluation of Dr. Schonberg's opinion.

### C. Dr. Lai and Dr. Davis

Plaintiff asserts Dr. Lai was the only physician to consider the combination of Plaintiff's physical and mental impairments. Plaintiff asserts the ALJ never mentioned this aspect of Dr. Lai's opinion and suggests the ALJ failed to consider the combined effects of Plaintiff's impairments. Plaintiff also argues the ALJ erred by ignoring portions of the opinions of Dr. Lai and Dr. Davis that conflicted with the conclusion the ALJ sought to reach.

Social Security Ruling 96-8p requires an ALJ to individually assess the exertional and non-exertional capacities of the claimant in determining his RFC. *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 547 (6th Cir. 2002). Although S.S.R. 96-8p does not require an ALJ to include a function-by-function discussion of a claimant's maximum capacity to perform each work-related activity, it does require an ALJ to "articulate how evidence supports the RFC determination, *discuss the claimant's ability to perform sustained work-related activities*, and explain the resolution of any inconsistencies in the record." *Id*. at 547, 548 (emphasis added).

The record shows that Dr. Lai is a physical medicine and rehabilitation specialist, and primarily saw Plaintiff for his physical complaints. Thus, the ALJ did not err by failing to mention that Dr. Lai's conclusions were based on his consideration of both Plaintiff's physical and mental impairments. The ALJ addressed both Plaintiff's physical and mental impairments in his written decision and there is no evidence that the ALJ failed to consider the combined effects of Plaintiff's physical and mental impairments. Accordingly, Plaintiff's arguments on this point are not well taken.

With respect to Dr. Lai's and the ME's assessments of Plaintiff's physical impairments, Plaintiff argues the ALJ erred by failing to address their conclusion that Plaintiff can only stand/walk and sit for 30 minutes at a time. Dr. Lai noted that his September 2005 findings remained the same as his findings in May 2004 (Tr. 223). Dr. Lai concluded Plaintiff can stand/walk and sit for 30 minutes at a time up to 6 hours a day and is extremely limited in bending (Tr. 225). The ALJ found this opinion to be an accurate assessment of Plaintiff's capabilities (Tr. 17). The ME testified Plaintiff can sit without limitation, and can stand/walk 30 minutes at a time with a change in position, up to 6 hours a day (Tr. 289). The ALJ concluded Plaintiff retains an RFC for light work that does not involve work at heights or climbing ladders, and requires no more than occasional bending, stooping, and crouching. (Tr. 15). The ALJ concluded Plaintiff's is capable of performing his past relevant work as a hand packer, which is sedentary and unskilled, because this work did not require the performance of work-related activities precluded by Plaintiff's RFC (Tr. 18). The ALJ indicated the RFC was supported by the opinions of Dr. Lai and the ME (Id.). Although the ALJ's opinion reflects that he accepted the opinions of Dr. Lai and the ME, the ALJ failed to incorporate into Plaintiff's RFC the 30 minute change of position limitation assessed by these physicians. The ALJ did not explain his reasons for rejecting this aspect of Dr. Lai's and the ME's conclusions. However, any failure on the part of the ALJ to address or adopt the 30 minute change of position limitation is harmless because Plaintiff retains the burden at Step Four to demonstrate that he cannot perform his past relevant work.

Plaintiff argues there is no evidence he can perform his past work as a hand packer if he must alternate between sitting and standing at 30 minute intervals. However, the initial burden

rests with the claimant to demonstrate that he is disabled and cannot perform his past work as a hand packer. *See Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 569 (6th Cir. 1989); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).  Defendant asserts Plaintiff should have cross-examined the VE as to the impact of Plaintiff's limitations on his ability to perform his past work.  In response, Plaintiff contends he could not cross-examine the VE on every conceivable combination of restrictions that later could be found by the ALJ.  The Magistrate Judge acknowledges the inability of counsel to question the VE on every conceivable combination of restrictions that could be assessed by the ALJ.  However, counsel had the opportunity to question the VE regarding the requirements of the job of hand packer as it is performed in the national economy.  Counsel also had the opportunity to question Plaintiff as to the requirements of his hand packer job as he performed it.  Counsel did not avail himself of this opportunity to question either Plaintiff or the VE with respect to the job of hand packer or Plaintiff's ability to perform this job on a full time basis.

Based on the above, the Magistrate Judge concludes the ALJ's treatment of the opinions of Dr. Lai and the ME does not constitute reversible error.

### D. Dr. Goldsmith

Plaintiff next claims the ALJ erred by ignoring the opinion of State agency psychologist Dr. Goldsmith and by failing to articulate the weight he assigned to this opinion.  Plaintiff's argument is well taken.

Dr. Goldsmith concluded Plaintiff is limited to routine tasks with minimal interpersonal contact and without strict time or production demands (Tr. 187).  The ALJ did not mention Dr. Goldsmith's evaluation or opinion.  An ALJ has a duty to consider the record as a whole. *See*

*Hurst v. Secretary of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (failing to consider the record as a whole undermines the ALJ's decision).  Indeed, an ALJ cannot simply "pick and choose" evidence in the record, "relying on some and ignoring others, without offering some rationale for his decision." *Young v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 644, 649 (E.D. Mich. 2004).  Social Security Ruling 96-6p states:

> Because State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, the rules in 20 CFR 404.1527(f) and 416.927(f) require administrative law judges and the Appeals Council to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.

The ALJ clearly violated the social security rules and regulations when he ignored Dr. Goldsmith's opinion.

Defendant does not address the ALJ's failure to consider Dr. Goldsmith's opinion, but asserts that Plaintiff bears the burden at Step Four to prove his limitations preclude past work.  While Defendants' assertion is correct, it does not remedy the ALJ's failure to consider Dr. Goldsmith's opinion.  The VE testified that an individual who can perform light work and is limited to the extent identified by Dr. Goldsmith is not capable of working full-time (Tr. 293).  Thus, Dr. Goldsmith's opinion, if accepted, would support a determination of disability.  The ALJ concluded Plaintiff retains an RFC for low stress light work, which requires the performance of only simple repetitive tasks and does not require contact with the public (Tr. 15).  The ALJ did not include the limitations assessed by Dr. Goldsmith regarding Plaintiff's interpersonal issues and strict time and production demand issues in his RFC determination.

And, the ALJ did not address these limitations in his written decision. The ALJ's RFC assessment must be an appropriate and supported reflection of Plaintiff's physical and mental capabilities, and it must be made in accordance with the regulations. The ALJ's failure to consider and evaluate the opinion of a State agency psychologist—whose opinion would support a determination of disability if accepted—is reversible error.

Accordingly, the Magistrate Judge concludes the ALJ's RFC determination and treatment of Dr. Goldsmith's opinion are not supported by substantial evidence.

## VI. DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner that Plaintiff was not disabled is not supported by substantial evidence. Accordingly, the Court recommends the decision of the Commissioner be REVERSED and REMANDED to the Social Security Administration for further proceedings not inconsistent with this Report and Recommendation.

s/ Kenneth S. McHargh<br>Kenneth S. McHargh<br>United States Magistrate Judge

Date: December 12, 2007

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).